UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-11513-RGS

WARREN ENVIRONMENTAL, INC.

v.

SOURCE ONE ENVIRONMENTAL, LTD.

MEMORANDUM AND ORDER ON
DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS

July 15, 2020

STEARNS, D.J.

Defendant Source One Environmental, Ltd., successor in interest to Fernco Environmental, Ltd. (Source One) – the remaining defendant in this case – moves to dismiss Warren Environmental, Inc. (WEI)'s claims against it for breach of contract, breach of the duty of good faith and fair dealing, and negligence.  For the reasons stated below, the motion will be <u>GRANTED</u> in part and <u>DENIED</u> in part.

## BACKGROUND

The court writes for the parties and assumes the readers' familiarity with the facts alleged in the First Amended Complaint (FAC) (Dkt # 4).  In short, WEI, headquartered in Massachusetts, owns a U.S. patent for a spray epoxy application known as the Warren Environmental System.  In 2006,

WEI filed an international patent application for its epoxy products and spray system.   In 2008, Source One, based in England, entered into a licensing agreement with WEI.[1]  The agreement granted Source One "directly or through its agent Flex-Seal Couplings, LTD, . . . [the exclusive right] to use and sub-license WEI's patented pumping system and its epoxy products in an '[A]greed [T]erritory' which included Europe, Australia, New Zealand and Norway."  *Id.* ¶ 30; Dkt # 31-1 ¶ 16.1.  Among other obligations, Source One agreed to be held "responsible for the maintenance and policing of the Warren patent within its territories."  Dkt # 31-1 ¶ 14.3.

In July of 2008, on the same date that WEI and Source One signed the licensing agreement, WEI and Flex-Seal Couplings, Ltd. (Flex-Seal), executed a Deed of Assignment in which WEI assigned to Flex-Seal its patent rights in the "Agreed Territories."  *See id.* at 16-17.  Flex-Seal, as the assignee of the patent rights, was designated to act as the agent for its subsidiary Source One in assuring protection of the patent rights.  FAC ¶ 34.  In fulfilling that role, Flex-Seal engaged Wilson Gunn, an English law firm, to prosecute

---

[1] The references in the signed Agreements to "Fernco" refer to "Fernco Environmental, Ltd." – the entity now known as Source One – not Fernco, Inc., the parent company and separate defendant in this litigation.  Fernco Environmental, Ltd., became Source One in January of 2014.  *See* FAC ¶ 37.

the patent before the European Patent Office (EPO) and designated its Commercial Director, Steve Riding, as the liaison with Wilson Gunn.

In June of 2015, the patent lapsed. Wilson Gunn sought to re-instate the patent with the EPO in November of 2015, but the EPO provisionally declined the request. On March 5, 2018, the EPO rejected a request to re-establish the patent after concluding that Flex-Seal had "not taken all the due care required by the circumstances." Dkt # 4-4 ¶ II.21. At the same time, the EPO concluded that WEI for its part had "fulfilled the prerequisite of all due care," *id.* ¶ II.10, as had Wilson Gunn. *Id.* ¶ II.23.

WEI alleges other contractual breaches apart from those involving the loss of its European patent. WEI alleges that Source One "secretly designed, engineered and created drawings for a spray system to compete with WEI's system [and] filed for a patent application in Australia for their system." FAC ¶ 116. WEI further alleges that Source One "attempted to design and test a knock-off epoxy," and "solicited, bought, sold and/or manufactured a copycat epoxy product." *Id.* ¶ 118. WEI also asserts that Source One was directed "to have WEI epoxies reverse[] engineered and/or manufactured by a German company who then produced copycat epoxy resins for the defendants." *Id.* ¶ 119. WEI contends that Source One "secretly sold knock-off, non-WEI epoxies to its European licensees under the Ultracoat name for

3

use with WEI's licensed spray system," *id.* ¶ 120, and "also manufactured, built, sold and/or used competing spray systems other than the WEI's systems." *Id.* ¶ 121.

## DISCUSSION

The licensing agreement that Source One signed with WEI contains the following provision:

> 23. APPLICABLE LAW
>
> 23.1 This agreement and negotiations between the Parties shall be governed by and construed in accordance with the law of the United States of America for the contract and issues pertaining to the Parties undersigned. British law will be used for issues relating to business conducted by [Source One] in its territories.
>
> 23.2 The Parties agree to submit to the exclusive jurisdiction of the Courts of the United States of America or the Courts of England, whichever is relevant as noted above, in regards to any claim or matter arising under or in connection with this agreement.

Dkt # 31-1 ¶ 23. "The parties agree that the 'Applicable Law' provision of the [a]greement is a forum selection clause." Pl.'s Opp'n (Dkt # 64) at 7.

Source One argues that, by its terms, the forum selection clause requires WEI to have brought the present action in a British court. Specifically, Source One maintains that because "[a]ll of the remaining claims are based on Source One's business in the Territory [consisting of parts of Europe, Australia, and New Zealand]," these claims "fall within the

4

exclusive jurisdiction of the Courts of England." Def.'s Mem. (Dkt # 51) at 15. WEI counters that the contractual language "compels that this dispute be heard in the United States." Pl.'s Opp'n at 6. According to WEI, "[m]aintenance of the WEI patent is not 'business conducted' in Europe; rather, it is conformance with the express terms of the parties' contract, which required Source One to perform such patent maintenance." *Id.* at 8. Source One responds that "maintenance and policing of the European patent application before the European Patent Office is business conducted in Europe," Def.'s Reply (Dkt # 67) at 2 – because such maintenance allegedly "was necessary to the stated business of marketing and selling the products within the Territory, and that the ability to market and sell the products in Europe, specifically, was diminished by the patent's lapse." *Id.* at 3. Source One also underscores that several of WEI's allegations extend beyond patent maintenance, addressing Source One's work "with a German manufacturer," FAC ¶ 90, sales to "European licensees," *id.* ¶ 91, and Source One's allegedly having "manufactured, built, sold and/or used competing spray systems" as gleaned from "information provided by . . . European and other foreign licensees." *id.* ¶ 92. *See* Def.'s Reply at 3. In the alternative, Source One argues that this action should be dismissed under the doctrine of *forum non conveniens.*

**Forum selection clause**

"Ordinarily, a motion to dismiss on the basis of a forum selection clause is judged according to a Fed. R. Civ. P. 12(b)(6) standard." *Hebert v. Vantage Travel Serv., Inc.*, 2018 WL 1156225, at *3 (D. Mass. Mar. 2, 2018). "The prevailing view towards contractual forum-selection clauses is that 'such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances.'" *Xiao Wei Yang Catering Linkage in Inner Mongolia Co., Ltd. v. Inner Mongolia Xiao Wei Yang USA, Inc.*, 150 F. Supp. 3d 71, 76 (D. Mass. 2015), quoting *Silva v. Encyclopedia Britannica Inc.*, 239 F.3d 385, 386 (1st Cir. 2001). "The 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.'" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 (2013), quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring). Accordingly, "'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Id.* (alteration in original) quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring).

"'Under federal law, the threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or

mandatory.'" *Autoridad de Energía Eléctrica de Puerto Rico v. Vitol S.A.*, 859 F.3d 140, 145 (1st Cir. 2017), quoting *Claudio-De León v. Sistema Universitario Ana G. Méndez*, 775 F.3d 41, 46 (1st Cir. 2014). "'[M]andatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum.'" *Id.*, quoting *Claudio-De León*, 775 F.3d at 46 (alterations in original). "'[T]ypical mandatory terms' [include] 'shall,' 'exclusive,' 'only,' or 'must'. . . ." *Id.* at 146 (alterations in original), quoting *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 17 n.5 (1st Cir. 2009).

The parties' forum selection clause at issue here is not limited in its intent – the chosen words are "shall be governed" and "will be used" – in conferring "exclusive" jurisdiction in the courts of the United States or those of England, "whichever is relevant as noted above." The forum selection clause requires that an action be brought in a United States court when it is premised upon "the contract and issues pertaining to the Parties undersigned" and in the courts of England "for issues relating to business conducted by [Source One] in its territories."

### Counts 1 and 2

"Under Massachusetts law, a breach of contract claim requires the plaintiff to show that (1) a valid contract between the parties existed, (2) the

plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." *Bose Corp. v. Ejaz*, 732 F.3d 17, 21 (1st Cir. 2013), citing *Singarella v. City of Boston*, 342 Mass. 385, 387 (1961). Intrinsically, "[e]very contract implies good faith and fair dealing between the parties to it." *Warner Ins. Co. v. Comm'r of Ins.*, 406 Mass. 354, 362 n.9 (1990), quoting *Kerrigan v. Boston*, 361 Mass. 24, 33 (1972). "The covenant requires 'that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. . . .'" *Nile v. Nile*, 432 Mass. 390, 398 (2000), quoting *Druker v. Roland Wm. Jutras Assocs.*, 370 Mass. 383, 385 (1976). Where a duty of good faith and fair dealing is alleged to arise from a contractual relationship, a claim for breach of that duty sounds in contract rather than tort. *Crellin Techs., Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 10 (1st Cir. 1994).

The controlling issues before the court in relation to Counts 1 and 2 are (1) whether Source One breached the terms of its contract with WEI and, (2) whether in doing so, Source One destroyed or injured the right of WEI to receive the fruits of the bargain. These issues concern compliance with the contract binding the parties – regardless of whether underlying factual allegations implicate Source One's business practices. As a result, Counts 1

and 2 fall squarely within the category of claims contractually required to be brought in the United States. Moreover, the court disagrees with Source One's contention that its alleged failure to maintain and police the Warren patent – one of several allegations underlying Counts 1 and 2 – should be categorized as "business conducted by" Source One rather than a matter of compliance with a fundamental contractual obligation.

Source One does not allege that the forum selection clause was the product of "fraud, undue influence, or overweening bargaining power." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972). Nor has Source One "made the requisite strong showing that enforcement of the clauses would be unreasonable and unjust." *Autoridad de Energia Electrica de Puerto Rico*, 859 F.3d at 147. When Source One entered into the agreement at issue in this case, "it knew that a distant forum might hinder its ability to call certain witnesses and might impose other burdens on its litigation efforts." *Atl. Marine*, 571 U.S. at 67. Consequently, it is bound by the licensing agreement's selection of a United States court for the contract dispute.

**Count 3**

Count 3, on the other hand, alleges negligence in Source One's performance of its agreement with WEI. Negligent performance does not address the failure to perform a contractual obligation, but rather a party's

*manner* of performance.  *See Anderson v. Fox Hill Vill. Homeowners Corp.*, 424 Mass. 365, 368 (1997).  This is the classical definition of a tort, and as it concerns "issues relating to business conducted by [Source One] in its territories," Dkt # 31.1 ¶ 23.1, is required by the parties' agreement to be brought in the courts of England.

"When the parties have agreed to a valid forum-selection clause [and a plaintiff has defied that clause], a district court should ordinarily transfer the case to the forum specified in that clause."  *Atl. Marine*, 571 U.S. at 62.  In such a scenario, "the plaintiff's choice of forum merits no weight" and "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."  *Id.* at 63.  "[T]he appropriate way to enforce a forum-selection clause pointing to a . . . foreign forum is through the doctrine of *forum non conveniens*."  *Id.* at 60; *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) ("The common-law doctrine of *forum non conveniens* 'has continuing application [in federal courts] only in cases where the alternative forum is abroad,' and perhaps in rare instances where a state or territorial court serves litigational convenience best.") (alteration in original), quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994).  Where a plaintiff has breached a valid forum selection clause, a district court "may consider arguments about

10

public-interest factors only." *Atl. Marine*, 571 U.S. at 64. In addition, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) [or *forum non conveniens*] transfer of venue will not carry with it the original venue's choice-of-law rules – a factor that in some circumstances may affect public-interest considerations." *Id.*

> In a *forum non conveniens* analysis, well-established
>
> "public interest" criteria include the administrative difficulties resulting from court congestion in the plaintiff's chosen forum; the "local interest in having localized controversies decided at home"; the interest in having the trial of a case conducted in a forum that is at home with the governing law; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of imposing jury duty on citizens in an unrelated forum.

*Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1354 (1st Cir. 1992), citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).

Here, WEI concedes that the factor addressing administrative difficulties is "neutral." Pl.'s Opp'n at 11. Second, any local interest that WEI has in adjudicating this tort action in Massachusetts is counterbalanced by (a) the reality that the alleged facts underpinning Count 3 relate to actions taken entirely outside of the United States, and (b) that Source One is based in England. "A court considering a motion for dismissal on the grounds of *forum non conveniens* does not assign 'talismanic significance to the

citizenship or residence of the parties,' and there is no inflexible rule that protects U.S. citizen or resident plaintiffs from having their causes dismissed for *forum non conveniens*." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 73 (2d Cir. 2003), quoting *Alcoa S.S. Co., Inc. v. M/V Nordic Regent*, 654 F.2d 147, 154 (2d Cir. 1980) (en banc).

WEI makes no assertion that England "does not permit litigation of the subject matter of the dispute," *Olin Corp. v. Fisons PLC*, 47 F. Supp. 2d 151, 157 (D. Mass. 1999), quoting *Mercier*, 981 F.2d at 1350. The sole remaining count alleges common law negligence. Litigating this count in the courts of England would not foreseeably cause any conflict of laws problems, as Massachusetts tort law is largely derivative of the English common law. "Moreover, as suggested by a long line of cases, England is generally considered an adequate forum." *Thomson Info. Servs. Inc. v. British Telecomms., PLC.*, 940 F. Supp. 20, 23 (D. Mass. 1996).

Further, there is no manifest unfairness in having an English court hear a negligence claim that involves the business dealings of a UK-based company. Nor would enforcing the forum selection clause in this case appear to contravene any strong public policy of Massachusetts. While it may be true as a "general rule" that "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard

[together] in the forum selected by the contracting parties," *Lambert v. Kysar*, 983 F.2d 1110, 1121-1122 (1st Cir. 1993), and while hearing such cases together may weigh in favor of judicial economy, it is also true that "it is the language of the forum selection clause itself that determines which claims fall within its scope." *Rivera*, 575 F.3d at 19.   For whatever reason, the parties in this case chose to assign disputes over breaches of their agreement and negligent performance of its obligations to different fora based on their respective locations.   The result may be awkward, but it is what the parties bargained for.  *See Atl. Marine*, 571 U.S. at 63.

## ORDER

For the foregoing reasons, Source One's motion to dismiss pursuant to Rule 12(b)(6) is <u>DENIED</u> on Counts 1 and 2 and <u>ALLOWED</u> on Count 3 without prejudice to being refiled in the appropriate court of England.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE